UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

WILLIAM EARL ELLIS,

                    Petitioner,

        v.

WARDEN WENGLER,

                    Respondent.

Case No. 1:10-CV-00405-EJL

**MEMORANDUM DECISION AND ORDER**

Pending before the Court in this habeas corpus matter is Respondent's Motion for Partial Summary Dismissal. (Dkt. 40.) The Motion is now fully briefed. (Dkt. 42, 43, 44.) Having fully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, in the interest of avoiding delay, the Court shall decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER - 1**

## PRELIMINARY MOTIONS

Petitioner filed a Sur-Reply in this case, which Respondent has asked the Court to strike. However, because Petitioner is proceeding pro se, the Court will grant leave for the filing and allow the Sur-Reply to stand. As a result, the Court will deny Respondent's Motion to Strike (Dkt. 45) and grant Petitioner's Motion to for Leave to Allow Substitution of Sur-Reply (Dkt. 46), seeking belated permission to file the Sur-Reply. The Court has considered all of the parties' briefing in the decision-making process.

## BACKGROUND

Pursuant to a plea agreement that reduced the number of criminal charges against him from two to one, Petitioner pleaded guilty to and was convicted of one count of lewd and lascivious conduct with a minor, arising from criminal charges in the Fifth Judicial District Court in Twin Falls, Idaho, Case No. CR-2005-11076. The judgment of conviction was entered on October 10, 2006. He was sentenced to a prison term of 15 years determinate with life indeterminate. (State's Lodging A-1.) Petitioner filed a Rule 35 motion for reconsideration of sentence with the state district court, which was denied. (*Id.*, pp.64-66, 74-80.)

Petitioner then filed a direct appeal, which was heard by the Idaho Court of Appeals. Petitioner raised issues of excessive sentencing and failure of the trial court to grant his Rule 35 motion for leniency. (State's Lodging B-4.) Petitioner did not file a timely petition for review with the Idaho Supreme Court. After the Idaho Court of Appeals issued its remittitur, Petitioner filed a petition for review, brief, and motion to

**MEMORANDUM DECISION AND ORDER - 2**

accept the untimely petition for review. (State's Lodgings B-5 to B-7.) The Idaho

Supreme Court granted the motion permitting the untimely petition for review to be filed,

and then it denied the petition for review. (State's Lodging B-8, B-9.)

Petitioner next filed a petition for post-conviction relief, and the state district court

appointed counsel for Petitioner. (State's Lodging C-1.) The State filed a motion for

summary dismissal, and the state district court issued a notice of intent to dismiss the

post-conviction petition. (*Id*.) After Petitioner's counsel filed a response brief,

the trial court issued an opinion and order granting summary dismissal of the petition.

(*Id.*, pp.80-88.)

Petitioner filed an appeal, in which he presented only one issue: whether, under

*Estrada v. State*, 143 P.3d 833 (Idaho 2006), his Sixth Amendment rights were violated

due to trial counsel's alleged failure to advise him of his right to remain silent during his

psychosexual evaluation (State's lodging D-1). The Idaho Court of Appeals affirmed the

dismissal of the petition, determining that Petitioner failed to show that he suffered

prejudice because, during his change of plea colloquy with the trial court, he "waiv[ed]

his right to remain silent and participat[e] in the psychosexual evaluation. The waiver was

voluntary, knowing and intelligent." (State's lodging D-4, pp.6-7.) Petitioner's petition

for review with the Idaho Supreme Court was denied. (State's Lodging D-5.)

Petitioner next filed a successive petition for post-conviction relief, and then an

amended petition through counsel, which included three claims of ineffective assistance

of trial counsel: (1) counsel coerced Petitioner into waiving his preliminary hearing; (2)

**MEMORANDUM DECISION AND ORDER - 3**

counsel failed to object to statements that Petitioner had intercourse with the victim and failed to inform the trial court that the victim's medical assessment did "not provide evidence of intercourse;" and (3) counsel failed to explore Petitioner's mental health issues, which might have allowed counsel "to recommend treatment options outside prison." (State's Lodging E-1, pp. 43-44.) Pursuant to a motion to dismiss filed by the State, the state district court entered a memorandum decision and a separate judgment dismissing Ellis's successive post-conviction petition with prejudice. (*Id*., pp.156-173.)

Petitioner next filed an appeal, challenging only the summary dismissal of his successive post-conviction claim that his trial "counsel failed to object to an inaccurate statement of the sentencing judge that Petitioner had 'full blown intercourse repeatedly with a 9 year old girl'" (State's Lodging F-1, p.6). The Idaho Court of Appeals affirmed the summary dismissal. (State's Lodging F-6.) The petition for review with the Idaho Supreme Court was denied, concluding all state court proceedings. (State's Lodging F-7, F-8.)

This federal habeas corpus case was stayed for a brief time, pending Petitioner's completion of his state court matters challenging the same conviction and sentence. The Court re-opened the case when the state court proceedings concluded, and Respondent's Motion for Partial Summary Dismissal followed.

**MEMORANDUM DECISION AND ORDER - 4**

## MOTION FOR PARTIAL SUMMARY DISMISSAL

**1.      Standard of Law Governing Summary Dismissal**

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus or claims contained in the petition when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." In such case, the Court construes the facts in a light most favorable to the petitioner. It is appropriate for the Court to take judicial notice of court dockets from state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

**2.      Standard of Law Governing Procedural Default**

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court may deny the claim on its merits, but it cannot otherwise grant relief on unexhausted claims. 28 U.S.C. § 2254(b). The petitioner can satisfy the exhaustion requirement by showing that (1) he has "fairly presented" his federal claim to the highest state court with jurisdiction to consider it, or (2) that he did not present the claim to the highest state court, but no state court remedy is available when he arrives in federal court (improper exhaustion). *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations

omitted).

To exhaust a habeas claim properly, a habeas petitioner must "invok[e] one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. at 845, giving the state courts a full and fair opportunity to correct the alleged constitutional error at each level of appellate review. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Improperly exhausted claims are deemed "procedurally defaulted." Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has *completely failed* to raise a particular claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts, as discussed directly above; or (3) when the Idaho courts have rejected a claim on an independent and adequate state procedural ground. *See Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).

**3.   Discussion of Procedural Default**

Respondent alleges that Claims 1 through 5 and 7 in the Petition for Writ of Habeas Corpus are procedurally defaulted:

Claim 1:   "Newly discovered evidence. The petitioner obtained a Medical Report from the Magic Valley Regional Medical Center . . . which says 'no previous allegations of abuse' . . . 'no evidence of any scars' . . . 'no fessures [sic] and no tears, and normal anatomy.'" (Dkt. 34, p.3.) [Due process under 5th and 14th Amendments.]

Claim 2:   The trial court used false information at sentencing against Ellis, saying he repeatedly had sexual intercourse with the victim, which was inconsistent with the findings of the medical report. (*Id.*, p.4.)

**MEMORANDUM DECISION AND ORDER - 6**

[Due process under 5th and 14th Amendments.]

Claim 3:      Ineffective assistance of trial counsel for failing to obtain medical
              reports allegedly showing Ellis did not engage in sexual intercourse
              with the victim. (*Id.*, pp.4-5.) [6th Amendment.]

Claim 4:      Ellis's guilty plea was induced by trial counsel's coercion and
              threats. (*Id.*, p.5.) [Due process under 6th and 14th Amendments.]

Claim 5:      (5) The trial court violated Ellis's privilege against self-incrimination
              by improperly considering, for sentencing, statements Ellis made to
              the polygraph examiner. (*Id.*, pp.6-8.) [5th Amendment right against
              self-incrimination.]

Claim 7:      The trial court considered unproven and inconclusive information
              resulting in the imposition of a more severe sentence. (*Id.*) [Due
              process under 5th and 14th Amendments.]

(Respondent's Brief, Dkt. 40-1, pp. 5-7, citing Amended Petition for Writ of Habeas

Corpus, Dkt. 34.) Claim 6 is not at issue, which is ineffective assistance of trial counsel

for failure to object or challenge the State or the trial court for using inflammatory

information that was not based upon fact or the record. (Dkt. 34, p. 9.)

        Because Petitioner brought only a few claims before the Idaho Supreme Court,

notwithstanding the large number of post-judgment filings he made, the simplest way to

determine whether Petitioner presented Claims 1-5 and 7 to the Idaho Supreme Court in a

procedurally proper manner is to examine which claims he did present, and see if Claims

1-5 and 7 are among them.

        First, on direct appeal, Petitioner challenged only the length of his sentence and

denial of the Rule 35 motion for sentence reduction. Second, in the appeal of the first

**MEMORANDUM DECISION AND ORDER - 7**

post-conviction petition dismissal, Petitioner presented only the *Estrada* issue–whether his counsel was ineffective for failing to advise him of his right to remain silent during the psychosexual evaluation. Third, on appeal of the successive post-conviction petition dismissal, Petitioner appealed "the dismissal only of the claim that he received ineffective assistance of counsel at sentencing when trial counsel failed to object to an allegedly inaccurate statement by the sentencing court that Ellis had had 'full blown intercourse' with the victim." (State's Lodging F-6, p. 2; F-1, p. 6.)

Turning to whether the current federal Petition for Writ of Habeas Corpus presents any of the three exhausted claims, the Court finds that no claim is the same. Here, Claim 1 regards newly discovered evidence in the form of a medical report of the victim; Claim 2 is that the *trial court* used false information about the nature of the crime at sentencing against Petitioner (close to, but not the same as, the post-conviction claim that counsel failed to object to the trial court's use of false information at sentencing, which is actually Claim 6); Claim 3 is ineffective assistance of trial counsel for failing to obtain the victim's medical report; Clam 4 is that the guilty plea was induced by trial counsel's coercion; Claim 5 is that the trial court violated Petitioner's privilege against self-incrimination by improperly considering statements made to the polygraph examiner; and Claim 7 is that the trial court considered unproven and inconclusive information to support a more severe sentence.

Accordingly, only Claim 6 of the Petition, which is the same as the successive post-conviction appeal issue and which is not at issue here, is properly exhausted. Claims

**MEMORANDUM DECISION AND ORDER - 8**

1, 2, 3, 4, 5, and 7 are procedurally defaulted because they were not properly presented to the Idaho Supreme Court, and it is now too late to do so.

The federal district court cannot hear the merits of procedurally defaulted claims unless Petitioner meets one of two exceptions: a showing of adequate legal cause for the default and prejudice arising from the default; or a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995). The Court will first address the miscarriage of justice exception, because it provides a factual basis for the "prejudice" portion of the cause and prejudice analysis.

**4.     Law Governing Miscarriage of Justice**

A federal district court can hear the merits of a procedurally defaulted claim if a habeas corpus petitioner demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496. To show a miscarriage of justice, Petitioner must make a colorable showing of factual innocence, *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995), supporting his allegations of constitutional error with new reliable evidence that was not presented at trial, *Schlup v. Delo*, 513 U.S. 298, 324 (1995). For example, types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, (1992), trustworthy

**MEMORANDUM DECISION AND ORDER - 9**

eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996).

Where the defendant pleaded guilty and did not have the evidence in his case evaluated by a jury, the petitioner must show that, based on all of the evidence, "it is more likely than not that no reasonable juror would have found Petitioner guilty. . . ." *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001), *citing Schlup v. Delo*, 513 U.S. at 327.

**5.      Discussion of Miscarriage of Justice**

Petitioner's miscarriage of justice or actual innocence argument does not challenge his conviction for lewd and lascivious conduct or his plea of guilty to that crime. Petitioner was charged with lewd and lascivious conduct on the basis of having manual-to-genital contact with the minor victim, under Idaho Code §18-1508. Prior to trial, and during the plea colloquy, Petitioner admitted to having manual-to-genital contact with the minor child victim. (State's Lodging A-2, p. 9.)

Rather, Petitioner argues that he is actually innocent of several "facts" upon which the sentencing court relied to fashion his sentence. Petitioner pleaded guilty to avoid a life sentence, but argues that, nevertheless, he received a life sentence because the judge was under the wrongful impression that Petitioner had engaged in sexual contact no less than 50 times with the victim (Dkt. 39, Notice of Newly Discovered Evidence) and the wrongful impression that Petitioner had intercourse with the victim multiple times. (State's Lodging A-2.)

**MEMORANDUM DECISION AND ORDER - 10**

The United States Supreme Court has declined to decide whether a procedural default can be excused by a petitioner "assert[ing] 'actual innocence' of a noncapital sentence." *Dretke v. Haley*, 541 U.S. 386, 388–89 (2004). To make an argument that he is "actually innocent" of a sentence, Petitioner would have to show that he was "actually ineligible for the [sentence he received] under the relevant [] state law." *Sawyer v. Whitley*, 505 U.S. 333, 347 (1992) (death penalty context). In other words, Petitioner must show that his sentence was not within that permitted by the statute under which he was convicted. There is no argument or evidence in the record that the life sentence was not within the statutory limits for the crime of lewd and lascivious conduct with a minor child under the age of 16. (*See* State's Lodging B-2; B-4.) Therefore, Petitioner's argument fails as a matter of law.

Even if the court assumes that Petitioner's version of "actual innocence" is a viable theory, Petitioner has failed to bring forward sufficient evidence of actual innocence of the sentence he received. Petitioner focuses much attention on the state court's statement that Petitioner had engaged in multiple acts of sexual intercourse with the victim. (State's Lodging A-2.) Petitioner believes that production of the medical examination report of the victim at sentencing would have shown the judge that intercourse did not occur.

This Court agrees with the Idaho Court of Appeals that "[t]hough not entirely clear, a portion of the victim's statements could be interpreted as describing sexual intercourse." (State's Lodging F-6, p. 3.) That statement came from the victim's description of when Petitioner placed his penis next to or "in, but not in" her vagina, and

**MEMORANDUM DECISION AND ORDER - 11**

then Petitioner continued the contact until he ejaculated–"One time he was laying down,

he called me in there and he way laying down and he said, 'Get your clothes off and get

on top of me,' and he put his in there, not in there but like that (gestured with marker

forwards her genitals)." (State's Lodging A-3, Affidavit in Support of Complaint and

Arrest Warrant, p. 3.)

     However, the victim's description of the manner and frequency in which Petitioner

sexually abused her, coupled with some instances of physical abuse and threats of force

or violence against her, is overwhelming. (*Id.*, pp. 1-6.) The victim reported that

Petitioner told her: "Fear me, not respect me." (*Id.*, p. 3.) In addition, one has to question

why Petitioner wanted the victim to take a pregnancy test if he did not penetrate the

victim with his penis in some manner. (State's Lodgings A-3, p. 5; F-6, p. 3.)

     The Idaho Court of Appeals concluded that the "sentencing court had information

before it from which it could conclude that Ellis had engaged in sexual intercourse with

the victim even though Ellis denied such conduct." (F-6, p. 4.) This Court concludes, that,

regardless of the issue of intercourse, the record clearly supports the sentence Petitioner

received, especially because he was considered a danger to the victim and her family as a

result of his threats of violence. (State's Lodging A-3, psychosexual report).

     The medical report Plaintiff believes should have been admitted does not

necessarily show signs of intercourse (but no medical opinion has been produced to show

that the medical report conclusions *preclude* intercourse), but it does show that the

victim's "labial are extremely erythematous [redness to the skin caused by irritation or

**MEMORANDUM DECISION AND ORDER - 12**

injury to the tissue]. In fact, the whole periurethral area and peri-hymenal area are all very red, very erythematous." (State's Lodging E-1, p. 47.) This is consistent with the type of repeated abuse the victim described. Thus, while Petitioner focuses solely on whether intercourse occurred, the entire record is replete with evidence of long-term, forced sexual abuse that warrants a life sentence.

Petitioner also contests the state district court's characterization that Petitioner "admitted" to the polygrapher to engaging in "no less than 50 different" instances of sexual abuse with the victim. ( Dkt. 39; State's Lodging A-2.) The polygrapher's actual statement was: "When asked, William did not deny that these sexual encounters happened more than fifty times and stated that it happened a lot." (State's Lodging A-3.)

Petitioner is not gaining any ground arguing that the sexual abuse occurred "a lot," but that it should not be characterized as "no less than 50 different" times. The record reflects that the victim alleged there were multiple incidents of sexual abuse in many different places over a two-year period of time. (State's Lodging A-3, Affidavit, pp. 1-6.) The record also reflects that the victim reported several instances where Petitioner threatened the minor victim in relation to the ongoing sexual abuse, including putting a pillow over her head, pulling her hair, hitting her, and making verbal threats. (*Id*.) On appeal, the Idaho Court of Appeals summarized the descriptions of the sexual abuse found in the record as "chronic, long-term, violent, and severe, even without the allegation of sexual intercourse." (State's Lodging F-6.)

**MEMORANDUM DECISION AND ORDER - 13**

The Court concludes that Petitioner's "actual innocence" argument fails because he is neither actually innocent of the sentence he received, or the crime he committed. Petitioner's denial that intercourse occurred is not relevant to this determination because a life sentence for lewd conduct can be pronounced in the absence of evidence of intercourse, and because intercourse is not a required element of the crime to which Petitioner pleaded guilty. *See* Idaho Code §18-1508. The record supports the sentence pronounced. Accordingly, Petitioner has not shown that he is actually innocent of his crime or sentence, either to excuse procedural default or as a free-standing habeas corpus claim, if, in fact, such a claim exists.

## 6.    Law Governing Cause and Prejudice

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

If a petitioner points to an instance of ineffective assistance of counsel during direct appeal that prevented the petitioner from properly exhausting his claims, he cannot rely on that instance unless he has first exhausted that particular ineffective assistance of counsel claim. If a petitioner has not exhausted any ineffective assistance of counsel

**MEMORANDUM DECISION AND ORDER - 14**

claim, then he cannot rely on such a claim for "cause" in a "cause and prejudice" argument. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (ineffective assistance of counsel cannot serve as cause for the default of another claim unless the ineffective assistance of counsel claim is not itself procedurally defaulted or cause and prejudice for the default of the ineffective assistance claim can be shown).

   A petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of his counsel during the post-conviction action cannot serve as a basis for cause to excuse Petitioner's procedural default of his claims. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991).

   The holding of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), established a "limited qualification" to the *Coleman* rule. *Id*. at 1319. In *Martinez*, the court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315. The *Martinez* Court explained that the limited exception was created "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Id*. at 1318.

   In Idaho, the post-conviction setting is the "preferred forum for bringing claims of ineffective assistance of counsel," although in limited instances such claims may be

**MEMORANDUM DECISION AND ORDER - 15**

brought on direct appeal "on purported errors that arose during the trial, as shown on the record"( as opposed to matters arising outside the record). *Matthews v. State*, 839 P.2d 1215, 1220 (Idaho 1992). Thus, in Idaho, *Martinez* can be applied to ineffective assistance of trial counsel claims arising from Idaho state court convictions and sentences, where the post-conviction setting was the first forum in which the ineffective assistance of trial counsel claim based on matters arising outside the record could have been brought and developed in an evidentiary hearing. *See Matthews*, 839 P.2d at 1220.

The *Martinez* Court explained that its holding was based on "equitable" rather than "constitutional" grounds, and emphasized that it was not to be applied generally to procedural default circumstances:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.... It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Id.* at 1320 (citations omitted).[1]

---

[1] The *Martinez* Court also reiterated that (1) § 2254(i) specifically provides that "incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in proceedings arising under section 2254," *id*. at 1320, and (2) its holding did not resolve the question of whether a prisoner has a right to effective counsel in collateral proceedings that provide the first occasion to raise a claim of ineffective assistance of trial counsel. *Id*. at 1315.

**MEMORANDUM DECISION AND ORDER - 16**

The Ninth Circuit has summarized the *Martinez* test as follows: "a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland*,[2] whether the petitioner's claim of ineffective assistance of trial counsel is substantial, and whether there is prejudice." *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (footnote added). Under *Strickland*, a petitioner must show that his counsel's performance was both unreasonably deficient and that the defense was actually prejudiced as a result of counsel's errors. *Strickland*, 466 U.S. at 684. The failure of an attorney to raise a meritless claim is not prejudicial. *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985).

Under *Strickland*, there is a strong presumption that an attorney performed within the wide range of professional competence, and the attorney's performance will be deemed deficient only if it fell below an objective standard of reasonableness measured under prevailing professional norms. *Strickland*, 466 U.S. at 689, 694. To prove prejudice, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's unreasonable errors, the result of the proceeding would have been different. *Id*. at 694. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id*. at 689. As a result, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

**MEMORANDUM DECISION AND ORDER - 17**

from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011) (internal quotations and citation omitted).

The application of the *Strickland* test in this instance means that Petitioner is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel on post-conviction review.

**7.      Discussion of Cause and Prejudice**

In Petitioner's Response to the Motion for Partial Summary Dismissal, he argues the merits of his claims, which the Court addressed under the miscarriage of justice exception, above. Petitioner does not make a cause and prejudice argument, but the Court will review whether *Martinez v. Ryan* is applicable to Petitioner's two procedurally defaulted trial counsel claims:

> Claim 3:      Ineffective assistance of trial counsel for failing to obtain medical reports allegedly showing Ellis did not engage in sexual intercourse with the victim. (*Id.*, pp.4-5.) [6th Amendment.]
>
> Claim 4:      Ellis's guilty plea was induced by trial counsel's coercion and threats. (*Id.*, p.5.) [Due process under 6th and 14th Amendments.]

(Respondent's Brief, Dkt. 40-1, pp. 5-7, citing Amended Petition for Writ of Habeas Corpus, Dkt. 34.) (For clarification's sake, the Court notes that Petitioner's other ineffective assistance claim, Claim 6, is not procedurally defaulted. (*See* Dkt. 34, p. 9.))

**MEMORANDUM DECISION AND ORDER - 18**

The state court record reflects that Petitioner filed a pro se post-conviction application. (State's Lodging C-1, pp. 6-18.) Attorney Tim Williams was appointed counsel on Petitioner's post-conviction case, but Petitioner complained to the court that Mr. Williams disregarded all of Petitioner's correspondence. (*Id.*, pp. 22-23.) The State filed a motion to dismiss the post-conviction application on May 13, 2008. (*Id.*, p. 52.) The court issued a notice of intent to dismiss the application. (*Id.*, p. 69.)

Mr. Williams filed a short response brief. (State's Lodging C-1, pp. 74-79.) On the claim that trial counsel coerced Plaintiff into pleading guilty, Mr. Williams pointed out that "Petitioner's complaint puts squarely at issue the veracity of what prior counsel told Petitioner, and what Petitioner claims his counsel told him. This is an issue for evidentiary purposes." (*Id.*, p. 77.)

During the course of the first post-conviction action, Petitioner sent a letter to Mr. Williams attaching the victim's medical report. (State's Lodging E-1, p. 20.) However, Petitioner's original post-conviction application did not contain a claim that trial counsel failed to obtain and use the victim's medical report. Mr. Williams did not amend the application to include such a claim. (See State's Lodging C-1.)

### A.    *Martinez v. Ryan Applied to Claim 3*

The underlying issue regarding Claim 3 is whether there is a reasonable probability that trial counsel's introduction of the victim's medical report at sentencing would have made a difference in Petitioner's sentence of 15 years to life. Based on the Court's analysis of the evidence relied upon by the trial court at sentencing set forth above in the

**MEMORANDUM DECISION AND ORDER - 19**

"miscarriage of justice" section of this Order, the Court concludes that Petitioner has not shown a reasonable probability that introduction of the victim's medical record would have made a difference in the outcome of the sentencing hearing. In fact, the medical record tended to show recent, painful abuse, consistent with the type of genital-to-genital contact described by the victim.

For all of the foregoing reasons, Petitioner has shown neither deficient performance nor prejudice of trial counsel for failing to introduce the medical report of the victim at sentencing. Petitioner has not shown that Mr. Williams' representation during the first post-conviction proceeding, in failing to raise this issue, was objectively unreasonable, and that, but for the failure, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel on post-conviction review.

### B.    *Martinez v. Ryan Applied to Claim 4*

Claim 4 is that Petitioner's guilty plea was induced by trial counsel's coercion and threats. The record reflects no actual coercion or threats on the part of Petitioner's trial attorney. Rather, Petitioner's claim is one that an inaccurate prediction of the sentence outcome amounts to "coercion." The Court liberally construes this as an ineffective assistance of counsel claim. The question at hand for a cause and prejudice analysis is whether counsel in the first post-conviction matter handled this claim on post-conviction review in an ineffective manner.

**MEMORANDUM DECISION AND ORDER - 20**

Prior to the sentencing hearing, Petitioner completed a "Felony Guilty Plea Questionnaire." (State's Lodging A-1, pp. 33-36.) In the Questionnaire, Petitioner indicated that he was satisfied with his trial attorney's services, that he felt his attorney had adequately and competently represented him, that he understood the sentence could be a penitentiary term of life without probation, that no person has threatened him or done anything to cause him to enter the plea against his will, that no person promised him he would receive any particular sentence, and that only the sentencing judge could promise which sentence he would actually receive. (*Id.*)

At the change of plea hearing, the following colloquy took place:

Court:      Do you understand that charge carries a maximum of life in prison and a maximum fine of $50,000?

Petitioner:  Yes, sir.

Court:      The state's recommendation is to remain open until you receive a psychosocial evaluation. Do you agree to obtain such an evaluation?

Petitioner:  Yes, sir.

(State's Lodging A-2, p. 8.)

Petitioner asserted in his pro se post-conviction application:

[C]ounsel became very blunt and to the point with petitioner explaining that after reviewing the state's evidence he felt that he could not put forth a valid defense for him and that if he insisted on going to trial that the state would most certainly convict him and give him the maximum sentence of life. He further advised the petitioner that he should seriously consider pleading guilty where a real possibility existed, that due to petitioner's lack of prior

**MEMORANDUM DECISION AND ORDER - 21**

criminal history that he could get him a Rider[3] and probation.

      Petitioner asserts that in relying on counsel's advice and the emphasis placed on obtaining the petitioner a Retained Jurisdiction sentence by counsel [sic]. This became the sole deciding factor for petitioner to forego a trial and to pled guilty.

(State's Lodging C-1, p. 10 (spelling regularized, footnote added).)

Along with *Strickland*, several other cases are instructive to evaluate trial counsel's advice on pleading guilty. In *Blackledge v. Allison*, 431 U.S. 63, 73-44 (1977), it was alleged that the defense attorney promised that the defendant would get a certain sentence (upon representations to defendant that the attorney had consulted the prosecutor and judge about the sentence) and that the defense attorney had instructed the defendant to answer the questions in a manner so that the judge would accept the plea agreement, 431 U.S. at 69.

Here, in contrast, Petitioner does not allege that his trial attorney promised that Petitioner would receive a certain sentence, only that his attorney made a prediction as to the sentence he would receive, and that prediction turned out to be erroneous. Petitioner argues that he would not otherwise have pleaded guilty, but for the erroneous prediction.

The United States Court of Appeals for the Ninth Circuit has held that an incorrect sentence prediction that amounts to "a gross characterization of the likely outcome . . .

---

[3] In 1972, Idaho created its unique "Rider Program" at the North Idaho Correctional Institution (NICI) by statute. *See* I.C. § 19-2601. The program allows a court to suspend execution of a judgment and retain jurisdiction, while the convicted felon spends a period of time in custody for evaluation, after which the court can grant probation or effectuate the original judgment.

**MEMORANDUM DECISION AND ORDER - 22**

combined with the erroneous advice on the possible effects of going to trial" would be enough to establish deficient performance under the *Strickland* standard. *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir.1986). In *Iaea*, the attorney told the defendant that he had almost no chance of getting prison time (yet was sentenced to a life term), and that he could escape being subject to the minimum sentencing law only by pleading guilty, advice which was an incorrect statement of the law. *Id*. at 864-65.

The United States Supreme Court has held that the validity of a guilty plea turns on "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In *Hill*, the Court held that a plea is not knowing and voluntary if it was the result of defense counsel's advice amounting to ineffective assistance of counsel. *Id*. at 59. A plea is "knowing" if a defendant understands the federal constitutional rights he is waiving by pleading guilty, and it is "voluntary" if he "possesses an understanding of the law in relation to the facts." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 466 (1938)). Another definition of "voluntary and intelligent" is if the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31.

Here, even if the Court assumes that the performance of trial counsel was deficient in predicting a "real possibility" of a Rider or lesser sentence, Petitioner has failed to show any prejudice, because the change of  plea colloquy makes it clear that Petitioner understood that, regardless of his counsel's prediction, the Court had authority to sentence

**MEMORANDUM DECISION AND ORDER - 23**

Petitioner to the maximum life sentence without probation. (State's Lodging A-2, p. 8.) Petitioner read and signed the "Felony Plea Questionnaire," indicating that he understood "the only person who can promise what sentence [he will] actually receive is the Judge." (State's Lodging A-1, p. 35.)

Further, there is no prejudice shown because, had Petitioner proceeded to trial, he likely would have been convicted based upon his own admissions that he engaged in sexual conduct with the minor victim, and would have been subjected to the same sentence–albeit without the benefit of having accepted responsibility for the crime. (See State's Exhibit A-3.) Again, evidence of intercourse was not necessary to prove the two charges of lewd and lascivious conduct.

Because there was no prejudice resulting from trial counsel advising Petitioner to plead guilty under the circumstances, Petitioner has not shown that post-conviction counsel's handling of this issue during the post-conviction proceeding–which was to point out that the claim presented an issue of fact that required an evidentiary hearing–was objectively unreasonable, and that, but for any error, there is a reasonable probability that Petitioner would have received relief on that claim in state court. Accordingly, *Martinez v. Ryan* does not save this claim from procedural default.

## 8.   Conclusion

The Court concludes that Claims 1, 2, 3, 4, 5, and 7 are procedurally defaulted. Petitioner has not shown that either exception applies to permit the Court to hear the merits of his procedurally defaulted claims. Accordingly, Petitioner is permitted to

**MEMORANDUM DECISION AND ORDER - 24**

proceed to the merits of only Claim 6. A final judgment on the procedurally defaulted claims will not be entered at this time, and, thus, Petitioner is notified that a notice of appeal is not ripe.

## ORDER

**IT IS ORDERED:**

1.    Respondent's Motion for Partial Summary Dismissal (Dkt. 40) is GRANTED. Petitioner's Claims 1, 2, 3, 4, 5 and 7 are DISMISSED with prejudice.

2.    Respondent's Motion to Strike Sur-Reply (Dkt. 45) is DENIED.

3.    Petitioner's Motion to for Leave to Allow Substitution of Sur-Reply (Dkt. 46) is GRANTED.

4.    Respondent shall file an answer to the remaining claims **within 90 days** after entry of this Order, **as to Claim 6 only**. The answer should also contain a brief setting forth the factual and legal basis of grounds for dismissal and/or denial of the remaining claim. Petitioner shall file a reply (formerly called a traverse), containing a brief rebutting Respondent's answer and brief, which shall be filed and served **within 30 days** after service of the answer. Respondent has the option of filing a sur-reply **within 14 days** after service of the reply. At that point, the case shall be deemed ready for a final decision.

**MEMORANDUM DECISION AND ORDER - 25**

5.      No party shall file supplemental responses, replies, affidavits or other

documents not expressly authorized by the Local Rules without first

obtaining leave of Court.

6.      No discovery shall be undertaken in this matter unless a party obtains prior

leave of Court, pursuant to Rule 6 of the Rules Governing Section 2254

Cases.

DATED:  **September 12, 2012**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 26**