UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

WILLIAM EARL ELLIS,

               Petitioner,

    v.

WARDEN WENGLER,

               Respondent.

Case No. 1:10-cv-00405-EJL

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is Petitioner William Earl Ellis's Amended Petition for Writ of Habeas Corpus (Dkt. 34). Respondent has filed an Answer and Brief in Support of Dismissal (Dkt. 51). Petitioner has submitted to the Court a letter containing argument on the Amended Petition (Dkt. 55), which the Court construes as his Reply. The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on January 28, 2011, and December 9, 2011. (*See* Dkt. 14, 37.)

Having fully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court shall decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying the Amended Petition and dismissing this case.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

Pursuant to a plea agreement that reduced the number of criminal charges against him from two to one, Petitioner pleaded guilty to and was convicted of one count of lewd and lascivious conduct with a minor, arising from criminal charges in the Fifth Judicial District Court in Twin Falls, Idaho, Case No. CR-2005-11076. The judgment of conviction was entered on October 10, 2006. He received a unified sentence of life in prison with 15 years fixed. (State's Lodging A-1.) Petitioner filed a Rule 35 motion for reconsideration of sentence with the state district court, which was denied. (*Id*. at 64-66, 74-80.)

Petitioner then filed a direct appeal, which was heard by the Idaho Court of Appeals. Petitioner raised issues of excessive sentencing and failure of the trial court to grant his Rule 35 motion for leniency. (State's Lodging B-4.) Petitioner did not file a timely petition for review with the Idaho Supreme Court. After the Idaho Court of Appeals issued its remittitur, Petitioner filed a petition for review, brief, and motion to accept the untimely petition for review. (State's Lodgings B-5 to B-7.) The Idaho Supreme Court granted the motion permitting the untimely petition for review to be filed and denied the petition. (State's Lodging B-8, B-9.)

Petitioner next filed a petition for post-conviction relief, and the state district court appointed counsel for Petitioner. (State's Lodging C-1.) The State filed a motion for summary dismissal, and the state district court issued a notice of intent to dismiss the post-conviction petition. (*Id*.) After Petitioner's counsel filed a response brief, the trial

**MEMORANDUM DECISION AND ORDER - 2**

court issued an opinion and order granting summary dismissal of the petition. (*Id.* at 80-88).

Petitioner filed an appeal, in which he presented only one issue: whether, under *Estrada v. State*, 143 P.3d 833 (Idaho 2006), his Sixth Amendment rights were violated due to trial counsel's alleged failure to advise him of his right to remain silent during his psychosexual evaluation (State's lodging D-1). The Idaho Court of Appeals affirmed the dismissal of the petition, determining that Petitioner failed to show that he suffered prejudice because, during his change of plea colloquy with the trial court, he "waiv[ed] his right to remain silent and participat[ed] in the psychosexual evaluation. The waiver was voluntary, knowing and intelligent." (State's Lodging D-4 at 6-7.) Petitioner's petition for review with the Idaho Supreme Court was denied. (State's Lodging D-5.)

Petitioner next filed a successive petition for state post-conviction relief, and then an amended petition through counsel, which included three claims of ineffective assistance of trial counsel: (1) counsel coerced Petitioner into waiving his preliminary hearing; (2) counsel failed to object to statements that Petitioner had intercourse with the victim and failed to inform the trial court that the victim's medical assessment did "not provide evidence of intercourse"; and (3) counsel failed to explore Petitioner's mental health issues, which might have allowed counsel "to recommend treatment options outside prison." (State's Lodging E-1 at 43-44.) Pursuant to a motion to dismiss filed by the State, the state district court entered a memorandum decision and a separate judgment dismissing Ellis's successive post-conviction petition with prejudice. (*Id.*, pp.156-173.)

**MEMORANDUM DECISION AND ORDER - 3**

Petitioner appealed, challenging only the summary dismissal of his successive post-conviction claim that his trial "counsel failed to object to an inaccurate statement of the sentencing judge that Petitioner had 'full blown intercourse repeatedly with a 9 year old girl.'" (State's Lodging F-1, p.6). The Idaho Court of Appeals affirmed the summary dismissal. (State's Lodging F-6.) The Idaho Supreme Court denied the petition for review, concluding all state court proceedings. (State's Lodging F-7, F-8.)

This federal habeas corpus case, filed on August 18, 2010, was stayed for a brief time, pending Petitioner's completion of his state court matters challenging the same conviction and sentence. (Dkt. 22.) The Court re-opened the case when the state court proceedings concluded, and Petitioner filed his Amended Petition.

Respondent lodged the state court record with the Court and filed a Motion for Partial Summary Dismissal. The Court granted the Motion, dismissing as procedurally defaulted all of Petitioner's claims except Claim 6. (Dkt. 50 at 7, 8-9.) Therefore, Claim 6—that counsel rendered ineffective assistance in failing to object to the sentencing court's statement that he had "full blown intercourse" with his child victim—is the only claim remaining in this matter.

# DISCUSSION

## 1.     Request for Leave to File Second Amended Petition

Petitioner has filed a document entitled "Answer to Brief in Support of Dismissal

**MEMORANDUM DECISION AND ORDER - 4**

of Petition for Writ of Habeas Corpus" (Dkt. 54), in which Petitioner seeks "an extension of time in order to prepare another amended petition." Because there is presently no deadline for further amendment, the Court construes this document as a motion to file a second amended petition. So construed, the motion will be denied.

The Federal Rules of Civil Procedure apply to habeas corpus proceedings to the extent that they are not inconsistent with established habeas practice and procedure. *See* Rule 11 of the Rules Governing Section 2254 Cases. By statute, an application for habeas relief may be amended "as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242.

Federal Rule of Civil Procedure 15 governs the amendment of civil pleadings. Pursuant to Rule 15(a)(1), a party may amend a pleading once "as a matter of course" within either (A) 21 days after serving the pleading; or, (B) if the amended pleading requires a responsive pleading to be filed thereafter, within the earlier of 21 days after service of a responsive pleading or a Rule 12(b), (e), or (f) motion. Any other amended pleadings cannot be filed absent written consent of the opposing party or leave of court, though "[t]he Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Although public policy favors amendment, a court retains the discretion to deny leave to amend after considering factors such as bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). These factors need

**MEMORANDUM DECISION AND ORDER - 5**

not be given equal weight, and futility of the amendment alone may justify the denial of the request. *Id*.

In a habeas case that has been initiated after the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA), a request for leave to amend must also be construed in light the provisions and policies of AEDPA, which is designed to promote finality, comity, and federalism. *Williams v. Taylor*, 529 U.S. 420, 436 (2000). In particular, to advance the finality of judgments, Congress included a one-year statute of limitations in AEDPA, *see* 28 U.S.C. § 2244(d), and an amended habeas claim that has been tendered after the expiration of AEDPA's statute of limitations will relate back to the initial filing date only when it is "tied to a common core of operative facts" in the original pleading, *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (construing the interplay between AEDPA and Federal Rule of Civil Procedure 15(c)).

The Court concludes that the factors identified in *Bonin v. Calderon* weigh against allowing Petitioner to file a second amended petition. There is no specific evidence that Petitioner requested amendment in bad faith. However, Petitioner's first Amended Petition was filed nearly two years ago, and Petitioner gives no explanation for the delay in seeking further amendment.

Petitioner has already amended his Petition once, and Respondent has fully briefed the issues in the Amended Petition. Respondent would be prejudiced if required to begin the process all over again. Finally, Petitioner has not explained how he would further amend the Amended Petition, and in light of the Court's analysis of the Amended Petition

**MEMORANDUM DECISION AND ORDER - 6**

as set forth below, the Court concludes that further amendment would be futile.

**2.      Standard of Law**

Petitioner's case is subject to the strict standards set forth in the Anti-terrorism and

Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, the Court cannot grant

habeas relief on any federal claim that the state court adjudicated on the merits unless the

adjudication of the claim

> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law,
>         as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in
>         the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) has two clauses, each with independent meaning. For a

decision to be "contrary to" clearly established federal law, the petitioner must establish

that "the state court applied a rule different from the governing law set forth in [the

Supreme Court's] cases, or [that] it decide[d] a case differently than [the Court has] done

on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court's decision satisfies the "unreasonable application" clause "if the state

court correctly identifies the governing legal principle from [the Supreme Court's]

decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal

court cannot grant relief simply because it concludes in its independent judgment that the

decision is incorrect or wrong; the state court's application of federal law must be

**MEMORANDUM DECISION AND ORDER - 7**

objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The state court

need not cite or even be aware of the controlling United States Supreme Court decision to

be entitled to AEDPA deference. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). The

Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that

was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*,

131 S. Ct. 1388, 1398 (2011).

   With respect to the factual findings of the state court, the habeas statute has two

separate provisions. The first, § 2254(d)(2)'s "unreasonable determination of the facts"

provision, applies to "situations where petitioner challenges the state court's findings

based entirely on the state record. Such a challenge may be based on the claim that the

finding is unsupported by sufficient evidence, that the process employed by the state court

is defective, or that no finding was made by the state court at all." *Taylor v. Maddox*, 366

F.3d 992, 1000 (9th Cir. 2004) (internal quotation marks and citations omitted). Under

this provision, "a federal court may not second-guess a state court's fact-finding process

unless, after review of the state-court record, it determines that the state court was not

merely wrong, but actually unreasonable." *Id.* at 999. The second provision, found in

§ 2254(e), provides that a "determination of a factual issue made by a State court shall be

presumed to be correct," and that the petitioner has the burden of rebutting this

presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

This subsection applies to "any challenge based on extrinsic evidence, *i.e.*, evidence

presented for the first time in federal court." *Taylor*, 366 F.3d at 1000.

**MEMORANDUM DECISION AND ORDER - 8**

A federal habeas court reviews the state court's "last reasoned decision." *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). The standard of § 2254(d) is onerous and is satisfied only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

Claim 6 alleges that Petitioner was denied effective assistance of trial counsel in violation of the Sixth Amendment. The standard for ineffective assistance of counsel claims was identified in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the

**MEMORANDUM DECISION AND ORDER - 9**

difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As the *Strickland* Court instructed:

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would

**MEMORANDUM DECISION AND ORDER - 10**

reasonably likely have been different absent the errors.

*Id.* at 695-96.

### 3.      Petitioner Is Not Entitled to Habeas Relief on Claim 6

####   A.      *Specific Facts of the Crime*

Petitioner sexually abused his step-daughter from when she was nine until she was

at least eleven years old.[1] The child reported that Petitioner called it a "game." (State's

Lodging A-3, PSI, at 2.) When Petitioner wanted the child to submit to the abuse, he

would call her into his room and say, "Hey, you wanna start that game over again?" (*Id.*)

When she tried to walk away, Petitioner became angry and made her sit still for 12 hours,

"call[ed] her names, put[] her on the wall, muscle[d] her, or spank[ed] her."

A social worker described the child's statement about the abuse:

> [Petitioner] would call her into his bedroom when her mother
> was gone. Sometimes he would come up behind her while she
> was doing the dishes and grab her breasts. She said he would
> tell her to come sit with him and he would tell her he gets a
> hard-on. One day when he called her in "there," he said,
> "Okay, let's play the game again." [The child] said her mother
> walked in on them while he was messing with her breasts and
> he had her pants down. She said he would mess with her
> "boobs" with his hands or sometimes with his mouth. She said
> her mother always wanted to give him another chance and

---

[1] It is not entirely clear when the abuse started, or how long it lasted. The child stated at one point that she was eleven when it started, but Petitioner admitted to the state court that he had abused her when she was "the age of 10 or 11 years old." (State's Lodging A-3 at 2; State's Lodging A-2 at 9.) Petitioner also stated during a psychosexual evaluation that his "sexual encounters" with the child occurred over two and a half years, when she was nine to eleven years old. (State's Lodging A-3, Psychosexual Evaluation, at 17-18.) Faced with all of this evidence, the state district court found that the abuse began when the child was nine. (State's Lodging A-2 at 41.)

**MEMORANDUM DECISION AND ORDER - 11**

would not report it.

[The child] continued by stating that when it was her turn, she would mess with him. When the [child was asked] what [Petitioner] wanted her to do when it was her turn, she said, "sometimes I would suck his dick and then sometimes he tells me to suck his balls." She stated that [Petitioner] "licks my no-no spot or plays with it with his fingers," but she said she jerks away. . . .

(*Id.*)

Petitioner used violence and intimidation to commit the abuse. He would hold a pillow over the child's face, "but she learned to 'shut up' so she wouldn't get hurt." (*Id.*) In a statement to the sentencing court, the child recounted another violent incident: "Another time when we were at the shooting range he got mad at me and started shooting toward me." (State's Lodging A-2, Victim's Statement at 2.)

Throughout the abuse, the child told Petitioner that she did not want him to do what he was doing to her, but he "told her it was okay and they would only do it every once in awhile. . . . 'But he lied. It's happened a lot of times. These are just the times I remember.'" (*Id.*) The child stated that Petitioner told her to fear him, not to respect him.[2] (*Id.*)

Although Petitioner claims that he never had sexual intercourse with the child, there is evidence in the record to the contrary. The child told a social worker that when

---

[2] In his reply letter to the Court, Petitioner challenges this statement, claiming that during a Bible lesson, he told the child to respect him, *not* to fear him, and that his words were "twisted around" in court. (Dkt. 55 at 1.) However, the statement about fear and respect is not related to Petitioner's claim that he was denied his Sixth Amendment right to effective assistance of counsel.

**MEMORANDUM DECISION AND ORDER - 12**

Petitioner was lying down, he would call her into the bedroom and tell her to take off her clothes and lie on top of him. (State's Lodging A-2, PSI, at 3.) As described in an officer's warrant affidavit, the child said that Petitioner would then "put his in there, not in there but like that (gestured with marker toward her genitals)." (State's Lodging A-2, Affidavit in Support of Complaint and Arrest Warrant, at 3.) The child told the social worker that this is what happened next:

> It was weird. It was really hot and it hurt and I told him that but he said to shut up. His dick was hard, it gets hard. He says that's when the game is almost over. The game ends when the white stuff comes out and I leave the room. *My mother called it fucking*. It's happened a lot of times, like ten. I turned eleven when it barely started. My mom said he's getting riskier. She was really mad.

(State's Lodging A-2, PSI, at 3) (emphasis added). Petitioner also forced the child to take a pregnancy test. (*Id.*)

In one instance, Petitioner took the child out of school for what he said was an emergency, "but there really wasn't an emergency. He made her take a shower with him and they 'did it' in the shower." (*Id.*) He also made her "do it" a second time. (*Id.*) The child described another occasion when Petitioner threw her CD player against wall because he was angry. He then told her that he wouldn't hurt her if she "would stand up and he would put the thing in again." (*Id.*) The child also said that sometimes Petitioner would make her "do it backwards" and "suck it." (*Id.*)

Petitioner did not deny that he abused the child, but told police that he did it only to keep his other children safe. He claimed that his step-daughter tried to have sexual

**MEMORANDUM DECISION AND ORDER - 13**

contact with her younger brother and sister, as well as with other children in the neighborhood, and that he "tried to curb her sexual habits by letting her experiment" with him, "teaching [her] to keep her sexual actions towards him" in order to spare the other children. (*Id*. at 4) (spelling regularized). Petitioner told the presentence investigator that "if he had it to do all over again, he would 'definitely try to get help with [his] problems and not deal with them on [his] own.'" (*Id*. at 5-6.)

As part of his plea, Petitioner underwent a psychosexual evaluation, including an attempted polygraph examination. During the pretest interview with the polygrapher, Petitioner "said that he performed oral sex on [the child] and would have [her] perform oral sex on him. When asked, [Petitioner] did not deny that these sexual encounters happened more than 50 times and stated that it 'happened a lot.'" (States' Lodging A-3, Psychosexual Evaluation, at 17.) The polygrapher did not complete the examination, however, determining that Petitioner's mental health issues would make it difficult to obtain an accurate result. (*Id*. at 17, 19.)

**B.    *The Sentence***

At sentencing, the prosecution asked for a 20 to 35 year sentence. (State's Lodging A-2 at 27.) Petitioner's counsel recognized that "this case represents, quite frankly, a fairly reprehensible and shocking case." (*Id*.) Counsel focused, however, on the fact that when the allegations came to light, Petitioner voluntarily checked himself into a psychiatric hospital and admitted his actions to police; counsel also noted that Petitioner had a "horrendously bad childhood." (*Id*. at 27-29.) The defense requested a 3 to 15 year

**MEMORANDUM DECISION AND ORDER - 14**

sentence with retained jurisdiction. (*Id*. at 32.)

The court sentenced Petitioner to 15 years to life in prison. The court gave numerous reasons for its decision, including that the abuse occurred over two and a half to three years and that the child would suffer the effects of the abuse throughout her life. (*Id*. at 37-38.) In addition, the sentencing judge stated, "I also have a problem trivializing the types of behavior before me, Mr. Ellis, in this case as bad judgment or poor choices. The file is replete with evidence of long-standing repetitive abuse, as I've already alluded to, including incidences of violence in order to keep the victim in line." (*Id*. at 40.) The court considered Petitioner's "use of a gun, the pillow over the victim's face, the hand over her mouth, throwing her CD player against the wall to show complete intimidation, the length of time and the number of incidences that went on for the extended period I've already alluded to. The incidences include *full-blown intercourse, repeatedly*, with a 9-year old girl, along with other depravities contained in the presentence report." (*Id*. at 41) (emphasis added). In sentencing Petitioner, the court also relied on an evaluating doctor's assessment that Petitioner had "all kinds of justifications and excuses for [his] behavior, typically blaming the victim for the problems and the difficulties [he] encountered during the period of time that [he was] abusing the victim." (*Id*.)

C.    ***The Decision of the Idaho Court of Appeals***

Petitioner argued in state post-conviction proceedings, as he does in his federal petition, that his trial counsel was ineffective for failing to object to the sentencing court's statement that he repeatedly had "full-blown intercourse" with the child. The Idaho Court

**MEMORANDUM DECISION AND ORDER - 15**

of Appeals rejected Petitioner's argument on both prongs of the *Strickland* analysis. With

respect to the deficient performance prong, the court stated:

> The sentencing court had information before it from which it
> could conclude that Ellis had engaged in sexual intercourse
> with the victim even though Ellis denied such conduct. The
> victim's own statements, contrary to Ellis's assertion, can
> reasonably be interpreted to support the district court's
> conclusion. Given this support, and the fact that Ellis's
> contrary assertion was also before the court in the materials
> that it considered at sentencing, it was not deficient or
> unreasonable for Ellis's attorney not to object to the
> sentencing court's expression of its disbelief of Ellis's version
> and its conclusion that sexual intercourse had occurred.

(State's Lodging F-6 at 4.)

With respect to the prejudice inquiry, the state court relied on two factors in

determining that Petitioner had failed to show that "his sentence would have been

different if the attorney had objected." (*Id*.) First, the court stated that because "there was

some support in the PSI for the sentencing court's conclusion, it is doubtful that any

objection would have been successful, and therefore the court still would have considered

the fact of sexual intercourse in its sentencing decision." (*Id*.)

Second, the court of appeals determined that the sentencing court's "belief that

Ellis had sexual intercourse with his victim was not a major factor in the sentencing

decision—the court relied on a number of other factors to support the length of its

sentence" and "devot[ed] particular focus and time to the effect of sexual abuse on the

victim and the repetitive, long-term, and violent manner in which Ellis perpetrated the

abuse. In fact, there was only one short reference to the fact that the nature of Ellis's

**MEMORANDUM DECISION AND ORDER - 16**

conduct included sexual intercourse." (*Id*. at 4-5.) The court stated that Petitioner's "contention that the sentencing court was more repulsed by the notion of intercourse than by Ellis's other conduct, including forced fellatio and cunnilingus, and act of physical violence to force the child's submission, bears no support in logic or in the record." (*Id*. at 6.) Thus, the court concluded that an objection by trial counsel would not have resulted in a lesser sentence.

### D.    The Decision of the Idaho Court of Appeals Was Neither Contrary To, Nor an Unreasonable Application of, *Strickland v. Washington*.

The Idaho Court of Appeals correctly identified *Strickland* as the governing law regarding claims of ineffective assistance of counsel, and its application of *Strickland* to Petitioner's case was eminently reasonable. (State's Lodging F-4 at 3.). Trial counsel knew, at the time of sentencing, that the child had told a social worker that her mother used the term "fucking" to describe one of the things that Petitioner was forcing the child to do. Counsel also knew that Petitioner had forced the child to take a pregnancy test. For obvious reasons, Petitioner would not have been so concerned that the child was pregnant if the abuse did not include intercourse. Because there was support for the district court's conclusion in the record, trial counsel's decision not to object to the sentencing court's statement did not fall below an objective standard of reasonableness, and the court of appeals therefore reasonably determined that counsel had not performed deficiently.

The court also appropriately concluded there was no reasonable possibility that an objection from Petitioner's counsel would have resulted in a lesser sentence. The aspects

**MEMORANDUM DECISION AND ORDER - 17**

of the crime that the district court found most relevant in its sentencing decision were (1) that Petitioner used intimidation and violence to cow the child into submission, and (2) that Petitioner blamed the child for his actions. As Petitioner told the presentence investigator, if he could do it all over again, he would "try to get help with [his] problems and not deal with them on [his] own." (State's Lodging A-2, PSI, at 5-6.) Petitioner was worried about *his* problems, which he claimed were the child's fault. He did not express remorse for the pain he inflicted upon his young victim. Petitioner thus revealed himself as a criminal who consistently blamed a young child for causing the repugnant and violent abuse committed against her. Therefore, the Idaho Court of Appeals reasonably held that even if defense counsel had objected to the sentencing court's statement that the abuse included not only forced fellatio and forced cunnilingus, but also forced intercourse—a statement supported by the evidence—Petitioner suffered no prejudice because the other sexual acts were sufficiently egregious to support the sentence.

The totality of the record supports the court of appeals' decision that Petitioner was not denied his Sixth Amendment right to effective assistance of counsel. Petitioner has not shown that the state court's decision is an unreasonable application of either prong of *Strickland* under § 2254(d)(1), or that the decision resulted from an unreasonable determination of the facts under § 2254(d)(2) based on the evidence in the record. Therefore, the Court will deny Claim 6 of the Amended Petition, the only remaining claim, and this case will be dismissed with prejudice.

**MEMORANDUM DECISION AND ORDER - 18**

# ORDER

**IT IS ORDERED:**

1.      Petitioner's Answer to Brief in Support of Dismissal of Petition for Writ of

Habeas Corpus, construed as a motion to file a second amended petition

(Dkt. 54), is DENIED.

2.      Claim 6 of the Amended Petition for Writ of Habeas Corpus (Dkt. 34) is

DENIED, and this entire action is DISMISSED with prejudice.

3.      The Court does not find its resolution of this habeas matter to be reasonably

debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

§ 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner

files a timely notice of appeal, the Clerk of Court shall forward a copy of

the notice of appeal, together with this Order, to the United States Court of

Appeals for the Ninth Circuit. Petitioner may seek a certificate of

appealability from the Ninth Circuit by filing a request in that court.

DATED:  **October 21, 2013**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 19**